**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SALVADOR LaFAUCI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CIV-04-004-S |
| | ) | |
| REGINALD HINES, Warden, | ) | |
| | ) | |
| Defendant. | ) | |

Petitioner, an inmate in the custody of the Oklahoma Department of Corrections and currently incarcerated at Lexington Correctional Facility in Lexington, Oklahoma, has filed this Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, attacking his conviction and sentence in Muskogee County District Court Case Number CF-2000-344 for Robbery by Force or Fear, First Degree Burglary, and Making an Obscene Phone Call. He sets forth the following grounds for relief:

> The trial court committed an error by not giving the jury a proper instruction regarding his theory of defense, that an unreliable witness identification requires reversal of his conviction because the lineup was inherently suggestive; that the third party pre-trial identification by Officer Long was inadmissable; that his conviction for both Robbery by Force or Fear and Burglary in the First Degree violate Double Jeopardy; an order nunc pro tunc is required to correct an error; Petitioner's sentences are excessive and require modification and the cumulative effects of all the above deprived Petitioner of a fair trial.

Docket #1 at 22-39.

The respondent has submitted the following records to the court for consideration in this matter:

a.  Petitioner's direct appeal brief.

b.  The State's brief in Petitioner's direct appeal.

c.  Summary opinion in <u>Lafauci v. State of Oklahoma</u>, F-2001-340 (Okla. Crim. App. July 18, 2002).

**Facts**

In the early morning hours of March 14, 2000, the house in which Virginia Reheard lived was broken into while she was sleeping. (Tr. II 9-11) Because Ms. Reheard does not hear well, the first time she was aware of an intruder in her house was when her light came on and she saw a man standing in her bedroom doorway. (Tr. II 11) The man told her that if she did not give him all of her money he would kill her. (Tr. II 12) Ms. Reheard tried to grab the pistol that was under her pillow, but the man took the weapon away from her. (Tr. II 12-13) The light was on in the bedroom during this encounter and Ms. Reheard had a good clear look at the man. (Tr. II 13-15) She testified that "When I was laying down, I was looking right up in his face. And I'll never forget it." (Tr. II 15) Ms. Reheard identified the man standing in her doorway as the petitioner. (Tr. II 12)

When Ms. Reheard told her assailant the money was in the kitchen, she was forcibly pulled down a 40 foot hallway to the kitchen. Once in the kitchen, she gave him the bank bags containing the money. (Tr. II 15, 19) The man touched Ms. Reheard's private parts and asked if she had any money down there. (Tr. II 20) She pulled his arm back and tried to hit him. In the

2

process of freeing her arm, her heart monitor fell to the floor. (Tr. II 20-21) When this occurred, Petitioner grabbed the three bank bags and left. (Tr. II 21) Ms. Reheard estimated the person left with approximately $600.00 and the .25 colt pistol. (Tr. II 57, 68)

Several days after the attack, Ms. Reheard began receiving obscene phone calls. (Tr. II 26) She reported the incidents and told law enforcement that the voice on the phone sounded like the voice of the man who robbed her. (Tr. II 27 & 77-78) The phone calls were traced. (Tr. II 76-81) On March 21, 2000, a Deputy went to the apartment from which the calls had been placed. (Tr. II 81) At the apartment he spoke with Michelle Lee who said that she lived there with Petitioner and Jeremy Jenkins. (Tr. II 81-83) Michelle Lee told the deputy that the night of the robbery Petitioner told her he was leaving to rob someone, but she did not believe him. (Tr. II 129) About an hour later, he returned and gave Michelle roughly $500.00 in cash. (Tr. II 131) At that time, they were over a month late on their $400.00 monthly rent payment. (Tr. II 130) When Petitioner returned and handed Michelle the money he told her that he had robbed an "older lady". (Tr. II 132 & 135) She testified that "He told me that the lady that he had robbed pulled a gun out on him, and he took the gun and threw it." (Tr. II 135)

On this same evening, Michelle Lee saw a red bank bag on their bedroom dresser that had not been there earlier. She identified it as the bag Ms. Reheard claims was stolen. (Tr. II 137-39) Ms. Lee also admitted that she took the cash Petitioner gave her and on that same day purchased a $400.00 money order to pay towards rent. (Tr. 133-34)

3

Petitioner, who was also in the apartment during this questioning, was arrested. (Tr. II 86-87) At the time of his arrest a piece of paper containing the victim's name and phone number was taken from petitioner's wallet which Ms. Reheard later identified as being that given when Petitioner was at her home ostensibly seeking to bid for roofing work. (Tr. II 90-91) Also found in the bedroom with Petitioner was the red bank bag he took from Ms. Reheard. (Tr. II 88-90) Virginia Reheard testified that she could identify the red bank bag as hers because it had a slight tear in a certain location. (Tr. II 18-19).

### **Ground I. Failure to Give Jury Instruction**

Petitioner contends the trial court erred by not *sua sponte* giving an alibi jury instruction. Under the revised federal habeas corpus statutes, habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The law provides that "[a]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive Petitioner of a fair trial and to due process of law." Patton v. Mullin, 425 F.3d 788, 807 (10th

4

Cir. 2005) (quoting Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997)). In applying this standard, the court typically considers whether the denied instruction was warranted under the facts of the case. Tyler v. Nelson, 163 F.3d 1222, 1227 (10th Cir . 1999) (turning to state law to determine whether petitioner was entitled to requested instruction). Under Oklahoma law, a petitioner who does not request a jury instruction is entitled to relief on appeal only if the failure of the trial court to so instruct deprived the petitioner of a substantial right. Wilkey v. State, 953 P.2d 347, 349 (Okla. Crim. App. 1998) (quoting Millwood v. State, 721 P.2d 1322, 1325 (Okla. Crim. App. 1998).

The court finds the failure to give the requested instruction neither violated a substantial right nor was the failure to give the instruction so fundamentally unfair as to deprive Petitioner of a fair trial and to due process of law. At trial Petitioner presented the alibi testimony of witness Rachel Hawkins. Ms. Hawkins described herself as an acquaintance who was having sexual relations "on occasion" with Petitioner around the time of the robbery. (Tr. II 237, 244) Ms. Hawkins claimed that both Petitioner and his friend Jeremy Jenkins were drinking and socializing with her and other friends on March 13, 2000, on the occasion of her brother's birthday. Ms. Hawkins testified that Petitioner was there in her home all evening. (Tr. II 237-238.) However, Jeremy Jenkins' testimony at trial does not support Ms. Hawkins' claims. To contradict Ms. Hawkin's testimony, Michelle Lee, Petitioner's live-in girlfriend, stated that Jeremy Jenkins was asleep in bed in their apartment when Petitioner was committing the robbery. (Respondent's Exhibit "D")

Further, there was other evidence which contradicted Petitioner's alibi. Petitioner had been identified by Ms. Reheard as the man who broke into her home and stole money from

5

her.  There was also evidence that after the robbery obscene phone calls were made from Petitioner's apartment by a man whose voice the victim said sounded like that of the man who robbed her.  At the time of his arrest, Petitioner had in his pocket the paper on which the victim wrote her address and phone number when Petitioner had approached her about obtaining a bid for roofing work.  Further, Petitioner's live-in girlfriend had stated that Petitioner came home the early morning hours of March 14 and said that he had robbed an older lady and she spotted a red bank bag she had never seen before. In addition, Petitioner had given Ms. Lee $500.00 in cash when he returned and they obtained a $400.00 money order to pay the rent on the same day of the robbery.  Petitioner and Ms. Lee were a month and a half behind on their apartment rent.  Petitioner also told Ms. Lee that Ms. Reheard tried to pull a gun on him, but he took it from her.  Finally, when arrested Petitioner had in his possession the red bank bag the victim positively identified.  The victim was able to identify the bank bag because of a small tear in it.  The court finds the trial court's failure to give the requested alibi instruction did not violate a substantial right nor was the failure to give the instruction so fundamentally unfair as to deprive Petitioner of a fair trial and to due process of law.

Petitioner has also alleged his trial counsel was ineffective in failing to request the alibi instruction.  In Strickland v. Washington, 466 U.S. 668, 689-90 (1984), the United States Supreme Court set forth the two-part test for determining the validity of a habeas Petitioner's claim of ineffective assistance of counsel.  The test requires a showing that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense."  Id. at 687.  A strong presumption exists that adequate assistance was given and the

burden is on the Petitioner to overcome that presumption. Strickland at 689-690. A "heavy measure of deference" must be given to counsel's judgments. Strickland at 691. Petitioner's counsel performed in a most thorough and aggressive manner in conducting cross examinations and in calling three witnesses on Petitioner's behalf. The record reflects the testimony concerning the alibi defense was inconsistent at best. Thus, the defense made a strategic decision based on this to not request an alibi instruction. Thus, the court finds the Petitioner has failed to establish that trial counsel's performance was deficient. Accordingly, the trial court's failure to instruct the jury on the defense of alibi *sua sponte* was not plain error given the inconsistent statements concerning his alibi and the other overwhelming evidence of guilt.

### Ground II: Victim Identification of Petitioner

Petitioner has alleged that Ms. Reheard's inadvertent view of Petitioner one week after the crime constituted an unduly suggestive "one man show-up" and that the same tainted her in-court identification. However, Petitioner fails to demonstrate to this court that such decision was contrary to or involved an unreasonable application of federal law. 28 U.S.C. § 2254 (d).

In determining whether a pretrial identification procedure was constitutional, the court "...first examines whether the procedure was unnecessarily suggestive." U.S. v. Bredy, 209 F.3d 1193, 1195 (10th Cir. 2000). If the court concludes that the procedure was unnecessarily suggestive, it then considers "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Neil v. Biggers, 409 U.S. 188, 199 (1972); see also Bredy at 1195. Thus, "we evaluate the reliability of the identification under the totality of the

7

circumstances to determine whether the suggestive show-up 'created a substantial likelihood of irreparable misidentification.' " Id. (quoting United States v. Thody, 978 F.2d 625, 629 (10th Cir.1992)). "Only when a pre-trial identification procedure is so unnecessarily suggestive that it is 'conducive to irreparable mistaken identification' does the procedure violate due process." Grubbs v. Hannigan, 982 F.2d 1483, 1490 (10th Cir.1993) (quoting Kirby v. Illinois, 406 U.S. 682, 691 (1972)).  In Biggers, the court set forth five factors to be considered in determining the reliability of a pre-trial identification.  These factors are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of his prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.  Biggers at 199-200.

First, the court must look at the opportunity of the witness to view the criminal at the time of the crime.  Ms. Reheard had a good clear look at Petitioner who was standing in her bedroom doorway with the lights on.  Specifically, Ms. Reheard testified "When I was laying down, I was looking right up in his face. And I'll never forget it." (Tr. II 15)  Ms. Reheard also saw her assailant as he led her down a forty foot long hallway and when they entered the kitchen together. (Tr. II 15-17)  While in the kitchen, Ms. Reheard retrieved the money as requested, which was in three bank bags.  Ms. Reheard stated "Well, he was just standing here, and I have a bar here, and I just pitched the bags, one at a time, up on the bar." (Tr. II 19)  Ms. Reheard testified that rather than leave when he had all her money,

8

Petitioner "reached down and he had this arm around here, reached down like this, all the way to the back, and he said, "Do you have any money down there" (Tr. II 19-20)  When his hand touched her "private parts" she struggled to free an arm to hit him, causing her heart monitor to fall off.  She said that when Petitioner saw the monitor with the loose wires laying on the floor, he appeared startled and left. (Tr. II 21)  Thus, Ms. Reheard had several good opportunities to view Petitioner during the crime.

As to Ms. Reheard's degree of attention during the commission of crime it was very high.  From struggling with Petitioner over the gun, to fetching her money bags, to trying to defend herself from an unwanted sexual advance, Petitioner clearly had Ms. Reheard's full attention.

The accuracy of prior identification is the third criteria.  Ms. Reheard consistently identified Petitioner as the man who broke into her home.  She identified him at the show-up, in a subsequent photo, at the preliminary hearing, and at the trial.  Further, she never misidentified another person as the perpetrator.

The degree of certainty is the fourth criteria.  Ms Reheard was always positive about her identification of Petitioner.  Ms. Reheard, at the show-up and without prompting, stood up and declared emphatically "That's him".  The fifth and final criteria is the time between the crime and the identification: only one week had passed.

The photo line-up done right after the show-up has two pictures of Petitioner (not identical pictures) and pictures of four other white men who look very similar to Petitioner.  The two pictures of Petitioner are not identical and do not otherwise make either any more likely to be picked over the other four.

It should also be noted that Ms. Reheard accurately described the assailant's race, hair color, approximate height and build and stated that he wore a goatee. (Tr. II 25) Upon seeing Petitioner Ms. Reheard remembered that the man had appeared at her house wearing a hat and a heavy coat on the pretense of bidding on a roofing job just a month or two earlier (Tr. II 36-37)  Petitioner wore no hat or coat during the robbery.

The circumstances involving the show-up should also be considered.  On March 21, 2000, Ms. Reheard was asked to come to the Sheriff's Office for a third time to view either pictures or individuals that may include her assailant (Tr. II 30)  Deputy Ken Long testified that prior to March 21, 2000, Ms. Reheard had viewed a great number of photos and one live line-up, yet she maintained that none of them looked like her assailant (Tr. II 95)  Deputy Long testified that no one had informed him that Ms. Reheard had arrived at the Sheriff's Office (Tr. II 96-97)  As Deputy Long was in the process of escorting Petitioner to jail, Ms. Reheard stood and said "that's him" (Tr. II 96-97, 31)  If Ms. Reheard was unsure of an identification or felt that being in the Sheriff's Office meant that they had "their man", then her prior trips to the office would have surely triggered a misidentification.  Additionally, there was no testimony to indicate that Ms. Reheard was told prior to the third trip (or

prior to the other two trips) that law enforcement thought that they had the man responsible for the crime. The court finds the show-up and the photo line-up were not suggestive. Petitioner has failed to show the trial court's determination was contrary to or an unreasonable application of federal law. Therefore, Petitioner is not entitled to habeas corpus relief.

### Ground III.  Third Party Identification

Petitioner contends that error occurred when Deputy Ken Long testified that the victim identified Petitioner in the "showup". Claims regarding evidentiary rulings are matters of state law which are not generally cognizable in federal habeas corpus proceedings. Gerlaught v. Stewart, 129 F.3d 1027, 1032 (9th Cir. 1997). In Estelle v. McGuire, 502 U.S. 62 (1991) the Supreme Court held that such matters are not proper for the federal habeas corpus relief. Rulings on the admissibility of evidence by state courts may not be questioned in federal habeas proceedings unless such decision renders the trial so fundamentally unfair as to constitute a denial of a federal constitutional right. Duvall v. Reynolds, 139 F. 3d 768, 787 (10th Cir. 1998)(internal citations omitted). Deputy Long's testimony concerning the victim's extra-judicial identification of Petitioner was cumulative. It came after the victim had already testified on the subject and had identified Petitioner in court as well. Petitioner has failed to establish the admission of the third party identification testimony was so fundamentally unfair as to deprive him of a fair trial and due process of law. Estelle at 67-68. Accordingly, Petitioner is not entitled to habeas corpus relief.

## Ground IV. Double Jeopardy Claim

Petitioner also asserts his convictions on two separate offenses violate the prohibitions against double punishment and double jeopardy. Petitioner argues his conviction for the offense of First Degree Burglary and offense of Robbery by Force or Fear arose from the same transaction and therefore, should have been merged into only one offense. Petitioner fails to demonstrate that such a decision was contrary to or involved an unreasonable application of federal law. 28 U.S.C. § 2254 (d).

In Blockburger v. United States, 284 U.S. 299 304 (1932) the United States Supreme Court established this test to determine the validity of a double jeopardy claim:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. Blockburger at 304.

The elements of the Offense of First Degree Burglary are:

First, breaking;
Second, entering:
Third, a dwelling;
Fourth, of another;
Fifth, in which a human is present;
Sixth, with the intent to commit some crime therein;
Seventh, by forcibly breaking a window in an outer door of the dwelling.

The elements for the offense of Robbery By Force or Fear are:

First, wrongful;

Second, taking;

Third, carrying away;

Fourth, personal property;

Fifth, of another;

Sixth, from the person or immediate presence of another;

Seventh, by force and or fear of immediate injury to her person.

Each offense contains elements that the other does not. Each offense is separate and distinct. Further, the Oklahoma Court of Criminal Appeals has held that the offense of First Degree Burglary and the offense of Robbery By Force or Fear do not merge into one offense. Taylor v. State, 889 P.2d 319, 339 (Okla. Crim. App. 1995). Applying, the Blockburger test to the elements of the two crimes with which Petitioner was found guilty, the court determines they are separate and distinct offenses and do not violate double jeopardy.

As to Petitioner's claim of violation of double punishment under 21 O.S. § 11 no violation occurred since the crimes in this case were two separate and distinct crimes. Pursuant to 21 O.S. § 11:

> A. If there be in any other provision of the laws of this state a provision making any specific act or omission criminal and providing the punishment thereof, and there be in this title any provision or section making the same act or omission a criminal offense or prescribing the punishment thereof, that offense and the punishment thereof, shall be governed by the provision of this title. But an act or omission which is made punishable in different ways by different provision of this title may be punished under any of such provision,

> except that in cases specified in Section 434 of
> this act [21 O.S. 51.1 ] or Section of this title,
> the punishment therein prescribed are substitute
> for those prescribed for a first offense, but in
> no case can a criminal act or omission be punished
> under more than one section of law; and an
> acquittal or conviction and sentence under one
> section of law, bars the prosecution for the same
> act or omission under any other section of law.

The Oklahoma Court of Criminal Appeals in <u>Davis v. State</u>, 993 P.2d 124 (Okla. Crim. App. 1999), established a test for determining the validity of a claim under this state statute:

> The proper analysis of a claim raised under
> Section 11 is then to focus on the relationship
> between the crimes. If the crimes truly arise out
> of one act as they did in <u>Hale</u>, then Section 11
> prohibits prosecution for more than one crime.
> One act that violates two criminal provisions
> cannot be punishment twice, absent specific
> legislative intent. The analysis does not bar the
> charging and conviction or separate crimes which
> may only tangentially relate to one or more crimes
> committed during a continuing course of conduct.

In the present case, Petitioner's convictions do not violate Section 11 because the offense of First Degree Burglary was complete upon Petitioner's entry into the residence, and the crime of Robbery committed after his initial entry is not an element of First Degree Burglary. <u>Taylor</u> at 339. Petitioner's conviction for Robbery By Force or Fear required further acts than just simply entering the dwelling of another with the intent to commit a felony; therefore, Petitioner's criminal objective changed. Thus, no violation of Section 11 occurred as the crimes for which Petitioner was convicted only slightly relate to each other. Since Petitioner's convictions are based upon separate and distinct crimes, no violation of double punishment or double

14

jeopardy occurred. Petitioner fails to demonstrate that the trial court's decision to charge him with these two crimes and punishments were an unreasonable application of federal law. 28 U.S.C. § 2245 (d). Therefore, Petitioner is not entitled habeas corpus relief on this claim.

### Ground V. Judgment and Sentence

Petitioner has asserted that there was an error in his judgment and sentence. The Judgment and the Sentence incorrectly stated that Petitioner was convicted under 21 O.S. § 801 (Robbery with Firearms). Noting that the Judgment and Sentence was incorrect, the Oklahoma Court of Criminal Appeals remanded the case to the trial court for corrections. The correction was made. Therefore, this ground for relief is moot. Accordingly, Petitioner is not entitled to any habeas corpus relief.

### Ground VI. Excessive Sentence

Petitioner complains that his sentences were excessive. Respondent correctly asserts this claim is not a proper issue for federal habeas corpus, because sentencing is a matter of state law. Shafer v. Stratton, 906 F.2d 506, 510 (10th Cir.), cert. denied, 498 U.S. 961 (1990).

> The Eighth Amendment's prohibition against imposition of cruel and unusual punishment requires that the sentence cannot be disproportionate to the severity of the crime or involve unnecessary infliction of pain. Again, the guiding rule is that the fixing of penalties for crimes is a legislative function, and the determination of what constitutes adequate

> punishment is left to the trial court's
> discretion; and if the sentence is within
> statutory limits, the appellate court will not
> regard it as cruel and unusual or excessive.

United States v. O'Driscoll, 761 F.2d 589, 599 (10th Cir. 1985) (citations omitted), cert. denied, 475 U.S. 1020 (1986).  See also Gaines v. Hess, 662 F.2d 1364, 1370 (10th Cir. 1981).  Petitioner does not dispute that his sentences were within the range of punishment proscribed by law.  Pursuant to Oklahoma law, the offense of Robbery by Force or Fear, 21 O.S.A. § 791 carries a sentencing range of not less than ten (10) years.  21 O.S.A. § 798.  Petitioner was sentenced to fifty (50) years imprisonment for this offense.  Additionally, the range of punishment for the offense of First Degree Burglary 21 O.S.A. 1431 is seven (7) years to (20) years imprisonment pursuant to 21 O.S.A. § 1436.  Petitioner's twenty (20) year sentence is within the statutory range.  Further, the offense of Making an Obscene Phone Call carries a punishment of up to one (1) year imprisonment in the county jail and/or a One Thousand Dollar ($1,0000) fine.  21 O.S.A. § 1172.  Petitioner's one (1) year sentence and Five Hundred Dollar ($500.00) fine are within the statutory range.   Because Petitioner's sentence was not outside the statutory limits,  habeas relief is not warranted.

### Ground VII. Accumulation of Error

Petitioner's last ground for error is that the accumulation of error merits relief from this court.  Petitioner has failed to establish under state law as well as under federal law that he is entitled to federal habeas relief on any claims.  Thus, there is no accumulation of state trial error.  Accordingly, habeas relief is not warranted on this claim.

**ACCORDINGLY**, Petitioner's petition for a writ of habeas corpus is **DENIED**, and this action is, in all respects, DISMISSED.

**IT IS SO ORDERED** this 19th day of September 2006.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma